**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **R.P. SMALL CORPORATION ET AL.,** | § | |
| **Plaintiffs** | § | |
| | § | **Case No: 4:16-CV-00390** |
| **vs.** | § | |
| | § | **Hon. Alfred H. Bennett** |
| **SM ENERGY COMPANY,** | § | |
| **Defendant** | § | |

**SM ENERGY COMPANY'S MOTION FOR**
**SUMMARY JUDGMENT ON THREE LEGAL ISSUES**

Defendant SM Energy Company ("SM Energy") files this Motion for Summary Judgment against Plaintiffs R.P. Small Corporation, John C. Bumgarner, Jr., John Sebastian, Helen Sebastian, Nelson B. Yoder, R.A.M. Royalty, Inc., APK Resources, LLC, and Meyer Holdings, LLC (collectively, "Plaintiffs") on three legal issues.

## I.  SUMMARY OF ARGUMENT

Plaintiffs' Complaint asserts a single claim against SM Energy: breach of a letter agreement between Plaintiffs and SM Energy dated March 20, 2013 (the "Letter Agreement").  Ex. 1, Dkt. No. 3 (First Amended Complaint) at ₱ 10; Ex. 2 (the Letter Agreement).  Plaintiffs claim that SM Energy was obligated to drill a single well on the Ranger Prospect (a collection of oil and gas leases in Walker and San Jacinto counties), and that it failed to drill the "Ranger Initial Well" by the contractual deadline.  *Id.* at ₱₱ 17-19.  Plaintiffs seek $59 million in lost profits damages, which they contend constitutes the present value of "the potential future net revenue" from the "full development" of 41 wells across the entire Ranger Prospect rather than the alleged lost profits for the Ranger Initial Well, which is the only well SM Energy was even arguably obligated to drill.  Ex. 5 at p. 5 (excerpts of Plaintiffs' expert report); Complaint at ₱ 27.  Plaintiffs do not seek any

other type of damages.  Ex. 4 at Interrogatory 11.[1]  Finally, Plaintiffs also request that the Court

order specific performance by ordering SM Energy to drill a well on the Ranger Prospect.  *Id.* at ₱

34.  But, yet, that remedy is moot as the underlying leases have expired on their own terms.

The Court should grant summary judgment in favor of SM Energy on Plaintiffs' claim for

three reasons:

1. <u>No Lost Profits Damages.</u>  Assuming that all other elements of Plaintiffs' claim are established (they are not), Plaintiffs' only damages are alleged lost profits that are expressly barred by the Letter Agreement's limitation of liability provision.  *See* Ex. A-1 at § 12 (barring recovery of "any… lost profits" in a dispute related to the agreement).  Even if lost profits were not barred by the parties' agreement, Plaintiffs' damages would be limited to the Ranger Initial Well, not 41 possible future wells in the Ranger Prospect as they now assert because SM Energy was only obligated to drill the Ranger Initial Well.

2. <u>Failure to Attempt Any Mitigation of Damages.</u>  Plaintiffs were obligated to mitigate their alleged damages, and they could have mitigated 100% of their alleged losses by exercising their contractual right to remove SM Energy as operator, drill the Ranger Initial Well, and obtain all of SM Energy's share of any profits from that well (in addition to any profits on their share of the interest in the Ranger Prospect).  Ex. 3 at Art. V(B)(1) (Resignation or Removal of Operator) and Art. VII(D)(1) (Defaults and Remedies: Suspension of Rights).  However, they elected not take any action to mitigate their damages, and they cannot now recover for their avoidable damages.

3. <u>Specific Performance is Moot.</u>  Plaintiffs' request for specific performance is moot because the Ranger Prospect leases have expired by their own terms.

Summary judgment is proper because Plaintiffs' admissions and the undisputed facts show that

there are no genuine issues of material fact with respect to the legal issues raised by Plaintiffs'

claims and addressed in this motion. SM Energy is entitled to judgment as a matter of law.

---

[1] Plaintiffs' claim for attorneys' fees in paragraph 28 of their Complaint arises only if they prevail and are awarded recoverable damages; as demonstrated in this Motion, they are not entitled to damages.  *See MBM Financial Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009).

## II.  SUMMARY JUDGMENT EVIDENCE

SM Energy's motion is based on the following judicial admissions, pleadings, and evidence:

| Exhibit No. | Description | Reference |
|---|---|---|
| 1 | Plaintiffs' First Amended Complaint (Dkt. No. 3) | Complaint |
| 2 | Letter Agreement attached to Plaintiffs' Complaint | Letter Agreement |
| 3 | Ranger Prospect Joint Operating Agreement | Ranger JOA |
| 4 | Excerpts of Plaintiffs' Responses to SM Energy's First Set of Discovery Requests | Discovery Responses |
| 5 | Excerpts of Plaintiffs' Expert's Report by Netherland, Sewell, & Associates, Inc. | NSAI Report |
| 6 | New Field Designation and Discovery Allowable Application filed by R.P. Small Corporation | Plaintiff's New Well Application |
| 7 | Letters Regarding Lease Expiration | Lease Expiration Letters |

## III.  UNDISPUTED FACTS

The following facts are undisputed:

| Issue | Fact | Evidence |
|---|---|---|
| Contract | **The Parties' Agreements.**  Plaintiffs and SM Energy negotiated and executed the Letter Agreement and Ranger Joint Operating Agreement (the "Ranger JOA"). | Exhibits 2 (Letter Agreement) and 3 (Ranger JOA), which were attached to Plaintiffs' Complaint |
| Contract | **Plaintiffs' Representatives.**  The Letter Agreement and Ranger JOA were negotiated and drafted for Plaintiffs by a professional landman, Michael Mann, and an attorney, Brent Blackstock. | Ex. 4 at Requests for Admission Nos. 11-16 (identifying Plaintiffs' lead negotiators) and p. 1 (Mr. Blackstock's signature identifying his Texas Bar Number) |
| Contract | **The Leases.**  Prior to the execution of the Letter Agreement, Plaintiffs obtained mineral leases covering approximately 23,000 mineral acres in two potential oil and gas fields in Walker and San Jacinto counties called the Tonto Prospect and the Ranger Prospect. | Ex. 2 (Letter Agreement) at § 1 (Lands) |
| Contract | **SM Energy's Payment.**  In connection with the Letter Agreement, SM Energy paid more than $10,000,000 to Plaintiffs to obtain a 75% working interest in the leases acquired by Plaintiffs that comprised the Tonto and Ranger Prospects.  Upon | Ex. 2 at § 4 (Consideration); Ex. 1 at ¶ 15; *see* Ex. 2 at § 6(b) |

| | | |
|---|---|---|
| | the closing of the Letter Agreement, SM Energy became the initial operator under the Ranger JOA. | |
| Contract | **Contractual Drilling Obligations.**[2]  SM Energy was obligated to drill one well on the Tonto Prospect, and SM Energy was obligated to drill one well on the Ranger Prospect – the "<u>Ranger Initial Well</u>" – by December 10, 2014 (the "<u>Ranger Deadline</u>"). | Ex. 1 at ¶¶ 17-19; *see also* Ex. 3 (Ranger JOA) at § XVI(K) (there is one "required well," the "Initial Well on the Contract Area") |
| Contract | **Limitation of Liability.**  Section 12 of the Letter Agreement states, in relevant part, **"NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NO PARTY SHALL HAVE ANY OBLIGATIONS OR LIABILITIES TO THE OTHER PARTIES, THEIR RESPECTIVE AGENTS WITH RESPECT TO THIS AGREEMENT, OR OTHERWISE IN CONNECTION HEREWITH, FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS."** | Ex. 2 at § 12 (emphasis in original) |
| Contract | **Plaintiffs' Option to Remove SM Energy.** Under the terms of the Ranger JOA, R.P. Small Corporation (acting alone) or all of Plaintiffs (acting together) had the right to remove SM Energy as operator at any time in the event of SM Energy's breach or failure to perform its obligations. | Ex. 3 at Art. V(B)(1) (Resignation or Removal of Operator); *Id.* at Art. VII(D)(1)(Defaults and Remedies: Suspension of Rights) |
| Contract | **Plaintiffs' Rights Upon a Default.**  Under the terms of the Ranger JOA, if any working interest owner removed SM Energy as operator, the default provisions permitted Plaintiffs to suspend SM Energy's rights, "includ[ing], without limitation… [SM Energy's] right to receive proceeds of | Ex. 3 at Art. VII(D)(1) |

[2] The Letter Agreement expressly contemplates that SM Energy might not drill the Ranger Initial Well by the Ranger Deadline, and the parties added a provision to their Letter Agreement to provide the consequence of that delay.  *See* Ex. 2, Letter Agreement, at § 6(e)(ii) ("If Buyer fails to commence or cause to be commenced the Ranger Initial Well by the Ranger Deadline, and if Buyer elects to drill a second well in the Ranger Prospect (the "*Second Ranger Well*"), then in addition to the costs attributable to its interest in the Second Ranger Well ("*Buyer's Ranger Costs*"), Buyer shall pay 50% of Seller's, HBM's and each of the RP Parties' respective share of the costs to drill, complete and equip the Second Ranger Well.").

For the limited purpose of this motion and without waiver or prejudice to SM Energy's defenses and positions, the Court may assume the truth of Plaintiffs' allegations regarding the obligation to drill the Ranger Initial Well.

| | | |
|---|---|---|
| | production from any well subject to this agreement." | |
| Post-Contract | **Plaintiffs' Drilling Expertise.**   Plaintiff R.P. Small Corporation is an experienced independent oil and gas company that has drilled one or more wells, including in the Tonto Prospect. | Ex. 6 (New Field Designation Application for well drilled by R.P. Small Corporation). |
| Post-Contract | **Closing and SM Energy Drilled the Tonto Initial Well.**   After the execution of the Letter Agreement, the parties went forward with the closing of their transaction.   Thereafter, SM Energy drilled a well on the Tonto Prospect. | Ex. 1 at ℙ 22 (acknowledging that SM Energy partially performed the Letter Agreement) |
| Post-Contract | **SM Energy Did Not Drill the Ranger Initial Well by the Ranger Deadline.** SM Energy did not drill the Ranger Initial Well by December 10, 2014. | Ex. 1 at ℙ 22. |
| Post-Contract | **Plaintiffs Knew SM Energy Would Not Drill the Ranger Initial Well.** SM Energy's decision not to drill the Ranger Initial Well by the Ranger Deadline was open and obvious. In fact, Plaintiffs contend[3] that SM Energy expressly "repudiate[ed] its obligation to drill the Ranger Initial Well" and "inform[ed] [Plaintiffs] that it [would] not commence any well on the Ranger Prospect." | Ex. 1 at ℙ 23. |
| Post-Contract | **Plaintiffs' File Suit.**   In February 2016, the Plaintiffs sued SM Energy. | *See* Dkt. No. 1. |
| Post-Contract | **Lease Expiration and Notice to Plaintiffs.** After the passage of time, the leases comprising the Ranger Prospect expired by their terms between June 2016 and November 2016.   Prior to the expiration of the leases, SM Energy notified Plaintiffs of the upcoming termination dates and SM Energy's intent not to renew them or drill the Ranger Initial Well. | Ex. 7 (Letters Regarding Lease Expiration). |
| Post-Contract | **No Mitigation.**   Plaintiffs did not remove SM Energy as the operator under the Ranger JOA; Plaintiffs did not propose or drill any well on the Ranger Prospect; and Plaintiffs did not extend or renew the leases on the Ranger Prospect. | Ex. 4 at Interrogatory No. 11(h). |
| Plaintiffs' Claims | **Plaintiffs Allege Only One Cause of Action.** Plaintiffs' Complaint only alleges one cause of action against SM Energy, *i.e.*, breach of the Letter | Ex. 1 at ℙ 26 ("The Defendant has breached the terms of the Letter Agreement by failing to drill any well on the Ranger |

---

[3] The alleged repudiation is a subject of discovery.  However, for the limited purpose of this motion and without waiver or prejudice to SM Energy's defenses and positions, the Court may assume the truth of Plaintiffs' allegations regarding the repudiation of the obligation to drill the Ranger Initial Well.

| | | |
|---|---|---|
| | Agreement by failing to drill the Ranger Initial Well. | Prospect."); *id.* at ¶¶ 17-22 (discussing the breached terms of the Letter Agreement). |
| Plaintiffs' Claims | **Plaintiffs Seek Only One Type of Damages.** Plaintiffs' Complaint alleges just one type of damages: lost profits from the potential future production of oil and gas from the entire Ranger Prospect, rather than just from the Ranger Initial Well. | Ex. 1 at ¶ 27; Ex. 5 at p. 5 (excerpts of Plaintiffs' expert's report); Ex. 4 at Interrogatory 11 (Plaintiffs seek their "share of the profits that would have resulted from the sale of all economically recoverable hydrocarbon reserves that may have been produced" from the Ranger Prospect). |
| Plaintiffs' Claims | **Plaintiffs Also Pleaded for Specific Performance.** Plaintiffs' Complaint alleges that the Court should order specific performance requiring SM Energy to drill the Ranger Initial Well. | Ex. 1 at ¶¶ 34-35. |
| Plaintiffs' Claims | **Plaintiffs Did Not Request Equitable Relief Before the Ranger Prospect Leases Expired.** Plaintiffs were aware of the expiration of the Ranger Prospect leases, but Plaintiffs did not request a hearing, so the Court never conducted any hearing on obtaining specific performance or any other equitable relief while any of the Ranger Prospect leases were still in force. | *See* Docket Sheet. |

## IV.  ARGUMENT AND AUTHORITIES

Assuming – for the limited purpose of this motion – that all other elements of Plaintiffs' claim for breach of the Letter Agreement are established,[4] the Court should grant summary judgment for SM Energy and dismiss Plaintiffs' claim for three straight-forward legal reasons:

1.  Even assuming – solely for the sake of this Motion – that SM Energy breached the Letter Agreement, Plaintiffs cannot establish that they sustained recoverable

---

[4] This is a diversity action. Dkt. No. 3 at ¶ 12. Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016). For the limited purpose of seeking summary judgment based on the issues discussed in this motion, SM Energy's motion does not address or contest the first three elements. However, SM Energy expressly reserves the right to challenge those all elements of Plaintiffs' claim by a subsequent motion and at trial.

damages resulting from that supposed breach.  Plaintiffs cannot recover lost profit damages, the only damages they seek, because the parties' Letter Agreement prohibits lost profit damages;

2.     Plaintiffs were obligated to mitigate their damages – and could have mitigated 100% of their damages – but they failed to do so; and

3.     Plaintiffs' request for specific performance is moot due to the passage of time and Plaintiffs' failure to seek specific performance before the expiration of the Ranger Prospect leases.

**A.     SM Energy Is Entitled to Summary Judgment Against Plaintiffs Because Plaintiffs' Only Claimed Damages – Lost Profits – Are Prohibited by the Parties' Letter Agreement.**

Plaintiffs' only alleged damages – lost profits – are not recoverable as a matter of law.

**1.     <u>Limitation of Liability Clauses Are Enforceable.</u>**

The Supreme Court of Texas recently explained:

> Texas's public policy that 'strongly favors freedom of contract.' We have repeatedly reaffirmed that competent parties 'shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice.' This 'paramount public policy' mandates that courts 'are not lightly to interfere with this freedom of contract.'

*Shields L.P. v. Bradberry*, ___ S.W.3d ___, 2017 Tex. LEXIS 448 at *18 (Tex. May 12, 2017).

Under Texas law, sophisticated contracting parties, such as Plaintiffs, may agree to limit liability for certain injuries and exclude lost profits, consequential damages, and other types of damages that would otherwise be recoverable under common law in the absence of a contractual exclusion. *See, e.g.*, Tex. Bus. & Com. Code § 2.719; *Fox Elec. Co. v. Tone Guard Sec.*, 861 S.W.2d 79, 81-82 (Tex. App.—Fort Worth 1993, no pet.) (affirming summary judgment); *Frost National Bank v. Heafner*, 12 S.W.3d 104, 111 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

For more than forty years, the Texas Supreme Court has held that parties can limit the types of recoverable damages when a contract is between private persons who bargain from positions of relatively equal strength. *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex. 1974) (since the

parties enjoyed "freedom of choice," there was no basis for avoiding the terms of the contract and enforcing the limitation of liability clause).[5]   An agreement will be enforced unless there is a disparity of bargaining power, and a disparity exists only if "one party has _no real choice in accepting an agreement_ limiting the liability of the other party."  _Id._ (emphasis added).

The United States Court of Appeals for the Fifth Circuit consistently has recognized and applied Texas substantive law honoring contractual damages limitations.   For example, in _Reynolds Metals Co. v. Westinghouse Electric Corp._, a panel of the Fifth Circuit held that "[t]he district court correctly found that Westinghouse's disclaimer of liability for special, indirect, incidental, and consequential damages was part of the parties' contract. Cognizant of the need to enforce this limitation, the district court excluded costs of transporting the transformer to and from Houston for repairs and _excluded all lost profits claims by Reynolds_."  758 F.2d 1073, 1078-79 (5th Cir. 1985) (emphasis added).  The panel affirmed the district court's exclusion of lost profit damages and remanded the case for a new determination of damages after ruling that repair costs were also excluded by contract.  _Id._ at 1079 ("Such damages, Westinghouse argues, are also consequential damages which may not be recovered under the agreement. We agree.").

## 2.     SM Energy and Plaintiffs Agreed to an Enforceable Limitation of Liability.

This Court should enforce the limitation of liability clause between SM Energy and Plaintiffs.  The enforcement of a limitation liability clause is a question of law for the court.  _See Allright_, 515 S.W.2d at 268; _see also Phillips v. Phillips_, 820 S.W.2d 785, 788 (Tex. 1991).

---

[5] Even public utilities can limit the types of damages that a private citizen or business can recover from them.  _See Houston Lighting & Power Co. v. Auchan United States_, 995 S.W.2d 668, 675 (Tex. 1999) (written tariff governing utility's service "should be applied as written" even though it "limit[ed] economic damages resulting from the utility's negligence").

Plaintiffs sued for breach of the parties' Letter Agreement, and there is no dispute that the Letter Agreement is valid.  *See, supra*, § III(A).  The Letter Agreement states, in relevant part, that:

> **NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NO PARTY SHALL HAVE ANY OBLIGATIONS OR LIABILITIES TO THE OTHER PARTIES, THEIR RESPECTIVE AFFILIATES AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS WITH RESPECT TO THIS AGREEMENT, OR OTHERWISE IN CONNECTION HEREWITH, FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS.**

Ex. 2 at § 12 (emphasis in original).

This conspicuous – bold and in all capitalized letters – limitation of liability provision is enforceable under Texas law.  Certainly, there was no disparity of bargaining power, and the parties had the freedom to negotiate and agree to the Letter Agreement; Plaintiffs can offer no legitimate reason not to enforce these sophisticated parties' contract as written.  *See Allright*, 515 S.W.2d at 267.

The Letter Agreement was a major transaction involving more than $10 million in consideration paid to Plaintiffs by SM Energy.   Ex. 2 at § 4 (consideration paid).  The Letter Agreement and the related agreements were negotiated by and drafted by counsel for both parties.  *See* Ex. 4 at Requests for Admission Nos. 11-16 (a Landman and an attorney served as Plaintiffs' authorized agents to negotiate and draft the terms of the Letter Agreement and the Ranger JOA).

The Letter Agreement was not an adhesion contract.  Rather, Plaintiffs owned the mineral leases at issue prior to the execution of the Letter Agreement, and if they did not want to agree to the heavily-negotiated terms of the Letter Agreement, they simply could have transacted business with another party, or contracted on different terms for different consideration.  This is the essence of freedom of contract, *i.e.,* Plaintiffs held the cards in the negotiation and they dealt at arms'

length with SM Energy in crafting the Letter Agreement, including its limitation of liability provision and exclusion of "any … lost profits."

The Court should honor these sophisticated parties' election to limit the available damages. The consideration paid would have been different if the contractual terms were different; legal and equitable considerations dictate the contract be enforced.

### 3.    Plaintiffs Seek Prohibited Lost Profits Damages.

Plaintiffs' only alleged damages – lost profits – are prohibited by the express terms of the parties' Letter Agreement.

First, it is undisputed that Plaintiffs' only alleged damages are alleged lost profits. Plaintiffs' Complaint alleges lost profits from the potential future production of oil and gas from the _entire_ Ranger Prospect, rather than from the only required well, the Ranger Initial Well, but, regardless of the overreach, it is all lost profits.  Ex. 1 at ¶ 27.  This claim is repeated in Plaintiffs' interrogatory answers and expert's report.   Specifically, Plaintiffs' expert's report states that Plaintiffs' seek the present value of the potential net revenue from the "full development" of 41 wells in the Ranger Prospect.  Ex. 5 at pp. 4-5; _see also_ Ex. 4 at Interrogatory 11 (Plaintiffs seek their "share of the profits that would have resulted from the sale of all economically recoverable hydrocarbon reserves that may have been produced" from the Ranger Prospect).

Second, under Texas law, lost profits – the "loss of net income to a business measured by reasonable certainty" – are unique among damages.  _Miga v. Jensen_, 96 S.W.3d 207, 213 (Tex.

2002).[6]  Depending on their nature, lost profits may be classified by the court[7] as either direct damages or consequential damages.[8]  *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 181 (Tex. App.—Fort Worth 2012, no pet.).  Profits lost on the actual breached contract are direct damages,[9] while profits lost on other contracts and business relationships are consequential damages.  *Id.*; *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 475 (Tex. App.—Eastland 2003, no pet.).

Third, while it can be classified in two different ways, the term "lost profits" has an accepted meaning.  "The plain, ordinary, and generally accepted meaning of the term 'loss of profits' includes 'direct' damages and 'indirect' damages."  *Continental Holdings*, 132 S.W.3d at 477 (citing *Hycel, Inc. v. American Airlines, Inc.*, 328 F. Supp. 190, 193 (S.D. Tex. 1971); *Imaging Systems International, Inc. v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124 (Ga. 1997)).

---

[6] Regardless of their classification, lost profits are often excluded as speculative, and lost profit damages, if any, are only recoverable if proven by reliable, competent evidence with reasonable certainty.  *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276. 279 (Tex. 1994); *Examination Mgmt. Serv., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 842 (Tex. App.– Dallas 2012, no pet.).  SM Energy reserves this issue for a later motion, if necessary.

[7] The classification of damages is a question of law for the court.  *See Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *see also* Craig Cherry et al, "The Classification of General and Special Damages for Pleading Purposes in Texas," 51 Baylor L. Rev. 629, 634 (1999).

[8] In a breach of contract case and in the absence of a valid liquidated damages clause or limitation of liability clause, the prevailing plaintiff may seek all actual damages.  *Farrell v. Hunt*, 714 S.W.2d 298, 300 (Tex. 1986).   Actual damages are either "direct" or "consequential."  *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).   Direct damages are the necessary and usual result of the defendant's wrongful act**.**  *See Southwind Aviation, Inc. v. Avendano,* 776 S.W.2d 734, 736 (Tex. App.—Corpus Christi 1989, writ denied).  Consequential damages, on the other hand, result naturally, but not necessarily, from the defendant's wrongful acts.  *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995).

[9] Other measures of damages – such as out of pocket loss – are available for a breach of contract.  However, none of those measures are at issue in this case.

---

A limitation of liability clause may prohibit recovery of _all_ lost profits damages or only lost profits damages that are consequential in nature. _Continental Holdings_, 132 S.W.3d at 475. As explained in the _Continental Holdings_ case, a contractual prohibition on the recovery of indirect or consequential damages necessarily prohibits the recovery of consequential lost profits. _Id._ at 477 ("a general prohibition of recovery of 'indirect' damages would include 'indirect' lost profits."). Accordingly, when parties expressly include the terms "lost profits" or "loss of profits" in the limitation of liability provision, parties exclude _both_ direct and consequential lost profits. _Id._ Otherwise, the inclusion of the term lost profits is rendered meaningless, and courts construing contracts should not render any term meaningless. _Id._ Thus, _both_ direct and consequential lost profits are excluded if the parties' exclude "lost profits" in their limitation of liability clause without using that term to modify the term "consequential."[10]

The Letter Agreement between SM Energy and Plaintiffs prohibits multiple types of damages, including lost profits, punitive damages, special damages, and consequential damages. Ex. 2 at § 12. While SM Energy believes that the lost profit damages Plaintiffs seek are consequential versus direct lost profits, the Court need not decide that question. As in _Continental Holdings_, the Court should find that the parties' specific inclusion of lost profits damages as a prohibited type of damage precludes Plaintiffs from recovering direct lost profits and consequential lost profits. The Court should give effect to all of the terms of the parties included, and the addition of the term "lost profits" – in concert with a separate prohibition on consequential

---

[10] Parties can express their intent to exclude _only_ consequential lost profits by listing lost profits as a specific type of consequential damages by enclosing it in parenthesis or commas _immediately after the word "consequential." See Powell Elec. Sys. v. Hewlett Packard Co._, 356 S.W.3d 113, 117 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Neither party shall be liable for any consequential damages (including, without limitation lost profits and unliquidated inventory).") (emphasis added); _Tenn. Gas Pipeline Co. v. Technip United States Corp._, 2008 Tex. App. LEXIS 6419 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (unpublished) ("Consequential Damages… in no event shall Owner or Contractor be liable to each other for… consequential loss or damage including, but not limited to, loss of profits…") (emphasis added).

damages – demonstrates that the parties sought to exclude both types of lost profits damages.  *See, e.g., Continental Holdings*, 132 S.W.3d at 477.

Finally, the limitation of direct lost profits does not leave Plaintiffs without a remedy.  Even without expectancy damages, a plaintiff in a breach of contract action may generally recover its restitution interest or its out of pocket (reliance) damages, plus its mitigation costs.  *See* Restatement (Second) of Contracts § 344 (1981); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 681 (Tex. 2000).  For example, if Plaintiffs had employed their experience in drilling other oil and gas wells in southeast Texas to drill a well on the Ranger Prospect, they may have sued to recover the out of pocket costs of drilling the Ranger Initial Well that could have been incurred by SM Energy.  *See* Ex. 6 (New Field Designation Application for well drilled by R.P. Small Corporation).  Plaintiffs also could have exercised legal remedies or express contractual remedies to suspend SM Energy's rights under the Ranger JOA, including the right to divest SM Energy of its share of profits in the leases.  Ex. 3 at Art. VII(D)(1)(Defaults and Remedies: Suspension of Rights).

SM Energy requests that the Court enforce the Letter Agreement's limitation of liability and prohibit the recovery of Plaintiffs' alleged damages of contractually-prohibited lost profits.

### 4.  Limitation of Damages.

In the alternative and to the extent the Court for some reason does not find that the parties' express prohibition of "any … lost profit" (Ex. 2 at § 12) does not apply to direct lost profits, SM Energy asks the Court to set the proper measure of damages as no more than the direct lost profit – if any – from only the Ranger Initial Well.

The measure of damages is a question of law, while the amount of damages is typically a fact question.  *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  The typical measure of damages for breach of contract is intended to put the

complainant in the same economic position had the contract been performed, if it can be determined with reasonable certainty. *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 (Tex. App.—Austin 2003, no pet.) (discussing the measure of damages); *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276. 279 (Tex. 1994) (discussing the requirement that any alleged direct lost profits be proven with reliable, competent evidence to reasonable certainty).

In connection with an agreement like the parties' Letter Agreement, the typical measure of damages in Texas is well-established.  In Texas, the "measure of damages for breach of an express promise to drill… is the benefit that the one party would have received had the other drilled the well as promised," *i.e.,* the lost royalty that would have resulted had the required well been drilled as promised.  John S. Lowe, *Analyzing Oil and Gas Farmout Agreements*, 3 Oil & Gas, Nat. Resources & Energy J. 263, 329-30 (July 2017) (discussing *Martin v. Darcy*, 357 S.W.2d 457, 459-60 (Tex. Civ. App.—San Antonio 1962, writ ref'd n.r.e.)).  However, "[b]ecause of the difficulty in a state like Texas of proving actual damages for breach of a farmout agreement," parties frequently modify or limit the measure of damages (*id.* at 331) as SM Energy and Plaintiffs did in their Letter Agreement.

In connection with the Letter Agreement, Plaintiffs allege that SM Energy was obligated to drill one well, the Ranger Initial Well.  *See* Ex. 1 at ¶¶ 17-19; Ex. 2 at § 6(e)(ii).  The Ranger JOA, which was made subject to the Letter Agreement, also only discusses one "required well," the "Initial Well on the Contract Area," *i.e*., the Ranger Prospect area.  Ex. 3 (Ranger JOA) at § XVI(K).

Despite the fact that the Letter Agreement limits any obligation to drilling the Ranger Initial Well, Plaintiffs' Complaint, interrogatory answers, and expert report seek damages for the "full development" of the Ranger Prospect with 41 future wells.  *See* Ex. 5 at p. 4.  Plaintiffs' alleged measure of damages does *exponentially more* than putting the parties in the same economic

position had the contract requirements been performed (*i.e.*, had the single required well been drilled).  *Centre Equities*, 106 S.W.3d at 154; *Martin v. Darcy*, 357 S.W.2d at 459-60.

Accordingly, if the Court assumes that SM Energy is liable and if the Court rules that the parties' limitation of liability for "any … lost profits" does not prohibit Plaintiffs' alleged lost profit damages (which SM Energy opposes), then the Court should rule that the appropriate measure of damages is no more than the lost profits to be proven from the Ranger Initial Well. Plaintiffs' cannot seek or recover any damages for any wells in excess of those attributable to the Ranger Initial Well.

**B.     SM Energy Is Entitled to Summary Judgment Against Plaintiffs Because of Plaintiffs' Failure to Mitigate Any of Their Alleged Damages.**

The Court should grant summary judgment against Plaintiffs because of their failure to mitigate – or even attempt to mitigate – their alleged damages, if any.  Failure to mitigate damages is a proper subject for summary judgment.  *See, e.g., Star Tex Gasoline & Oil Distribs. v. Sterling Personnel, Inc.*, 2017 Tex. App. LEXIS 5715 (Tex. App.—Edinburg 2017, pet. filed) (unpublished) ("We conclude that Sterling conclusively established its mitigation-of-damages defense and was therefore entitled to summary judgment.").

The doctrine of mitigation of damages "prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts."  *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995).  In a contract suit, amounts that a plaintiff recovered or should have recovered through mitigation of damages are offset against his recovery. *See, e.g., McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 278 (Tex. App.—Dallas 2006, no pet.); *Murphy v. Gulf Consol. Servs., Inc.*, 666 S.W.2d 383, 383-84 (Tex. App.—Houston [14th Dist.] 1984, no writ).

Plaintiffs' Complaint concedes that they knew SM Energy did not drill the Ranger Initial Well and that Plaintiffs believed that SM Energy "repudiated its obligation to drill" that well.  Ex. 1 at ¶¶ 22-23.  Plaintiffs were aware for approximately 18 months – between the December 2014 Ranger Deadline and the June 2016 expiration of the Ranger Prospect leases – that SM Energy was not drilling any well on that prospect and that the leases were expiring.  *See id.*; *see also* Ex. 7 (letter to Plaintiffs regarding expiring leases).  Despite that knowledge, Plaintiffs did nothing to preserve the Ranger Prospect leases.

The Ranger JOA provided Plaintiffs a mechanism for mitigating their damages and even gaining an additional interest if SM Energy was removed as operator.  Plaintiffs negotiated the Ranger JOA to provide for a mitigation mechanism that allowed them to remove SM Energy as the operator for the Ranger Prospect, drill wells, and suspend any of SM Energy's rights to any proceeds from any well in that prospect.  Specifically, under the terms of the Ranger JOA, R.P. Small Corporation (acting alone) or all of Plaintiffs (acting together) could remove SM Energy as operator at any time in the event of SM Energy's breach or failure to perform its obligations.  Ex. 3 at Art. V(B)(1) (Resignation or Removal of Operator); *Id.* at Art. VII(D)(1)(Defaults and Remedies: Suspension of Rights).  If Plaintiffs declared SM Energy in default of its obligation to drill the Ranger Initial Well,  Plaintiffs could have suspended SM Energy's rights, "includ[ing], without limitation… [SM Energy's] right to receive proceeds of production from any well subject to this agreement."  Ex. 3 at Art. VII(D)(1).  These provisions operate together to make the entire amount of Plaintiffs' alleged losses avoidable.  In fact, if they had exercised their right to suspend SM Energy's rights to any proceeds, Plaintiffs could have substantially improved their position – from a 25% interest to a 100% interest – in the alleged profit, if any, from the Ranger Initial Well. Thus, their recovery, if any, from the Ranger Initial Well would have *quadrupled* their initial contractual share.

Plaintiffs are sophisticated parties that are experienced in drilling oil and gas wells.  In fact, lead plaintiff R.P. Small Corporation drilled a well in an adjacent area at the same time it was complaining of SM Energy's failure to drill.  *See* Ex. 6 (New Field Designation Application for well drilled by R.P. Small Corporation).[11]  Plaintiffs are also experienced in obtaining mineral leases.  *See* Ex. 2 (Plaintiffs obtained more than 23,000 acres of mineral leases that they sold a partial interest in to SM Energy for more than $10 million).

Despite its duty to mitigate avoidable losses, Plaintiffs did not declare a breach under the Ranger JOA, and Plaintiffs did not remove SM Energy as operator.  Plaintiffs did not suspend SM Energy's rights and interests in the Ranger Prospect.  Plaintiffs did not propose or attempt to drill any well in the Ranger Prospect.  *See, supra*, § III(B).  They also did not drill the Ranger Initial Well and then sue SM Energy for the drilling costs.  Rather, Plaintiffs knew of the alleged breach and sued SM Energy in February 2016 (Dkt No. 1), but they took no action in Court or in the field to mitigate their alleged losses.  Plaintiffs also did not renew or extend any of the Ranger Prospect leases, despite notice from SM Energy that the leases were expiring.  Ex. 7.  Specifically, SM Energy began notifying Plaintiffs that leases were going to expire in early 2017 (Ex. 7), but as all of the Ranger Prospect leases expired between June 2016 and November 2016, Plaintiffs did nothing.  Instead, Plaintiffs knew for 18 months that the Ranger Prospect leases were lapsing, and they did nothing during that entire period to mitigate any alleged losses.

The Court should grant summary judgment on the basis that – to the extent Plaintiffs have any recoverable damages (they do not) – those damages are not recoverable because Plaintiffs failed to take any steps whatsoever to mitigate any of those alleged losses.  When an injured party

---

[11] Like most of the wells in that area, however, the well drilled by the Plaintiff was "uneconomic to produce."  *See id.* at p. 2 (discussing the failure of the well drilled by the R.P. Small Corp. and the absence of "any producing wells within a 2 ½ mile radius.").

fails to comply with the duty to mitigate damages, recovery is not permitted as to that part of damages that could have been avoided or was incurred as a result of the failure to mitigate, and summary judgment is appropriate. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15 (Tex. App.—Austin 1990, no writ) ("Pinson failed to mitigate his damages… [H]ad he done so, he would have suffered no loss. Accordingly, Pinson was not entitled to a judgment for damages."); *Star Tex Gasoline & Oil Distribs. v. Sterling Personnel, Inc.*, 2017 Tex. App. LEXIS 5715 (Tex. App.—Edinburg 2017, pet. filed) (unpublished) ("We conclude that Sterling conclusively established its mitigation-of-damages defense and was therefore entitled to summary judgment.").

**C.    SM Energy Is Entitled to Summary Judgment Against Plaintiffs Because Plaintiffs' Request for Specific Performance Is Moot.**

The Court also should grant summary judgment dismissing Plaintiffs' request for specific performance of the alleged obligation on SM Energy to drill the Ranger Initial Well because that request is moot because the underlying leases lapsed.

Specific performance is an extraordinary equitable remedy that may be ordered in certain circumstances to prevent a loss before trial. *Manning v. Wieser*, 474 S.W.2d 448, 449 (Tex. 1971). A preliminary injunction requiring specific performance before trial may not be granted unless a contracting party shows a probable right to relief and a probable injury unless performance is ordered during the pendency of the suit. *Id.*

A request for specific performance becomes moot if – for any reason – the requested order can no longer have practical legal effect. *Bevil v. Wilfert*, 241 S.W.2d 195 (Tex. Civ. App.—Beaumont 1951, no writ). For example, in *United Coin Meter Co. v. Johnson-Campbell Lumber Co.*, the Fort Worth Court of Appeals held that a challenge to the trial court's refusal to order specific performance of a lease should be dismissed as moot because the lease term expired while the case was on appeal. 493 S.W.2d 882, 890-91 (Tex. Civ. App.—Fort Worth 1973, no writ). As

another example, in *Hino Electric Holding Co., L.P. v. City of Harlingen*, the Edinburg Court of Appeals held, "Hino's claim is moot because the contract to provide power was from January through September 2007.   That time period has passed.   Specific performance would be impossible. The trial court did not err in granting summary judgment on  the specific performance claim."  2012 Tex. App. LEXIS 10789 at *7 (Tex. App.—Edinburg 2012, no pet.) (unpublished).

Plaintiffs' Complaint asserts a request to specific performance as "Count II" of its claims. *See* Ex. 1 at ¶ 31.  Plaintiffs allege that SM Energy had repudiated its drilling obligation and that the Ranger Prospect leases were lapsing (*Id.* at ¶¶ 23 & 35), and Plaintiffs also had direct notice from SM Energy that the leases were lapsing and that SM Energy did not intend to renew them. Ex. 7.  Although Plaintiffs may have sought Court intervention to obtain specific performance when they sued in February 2016 (*see* Dkt. No. 1), they did not do so.  Instead, leases in the Ranger Prospect began expiring in June 2016 and all leases expired by November 2016.  *See* Ex. 7. Despite knowing the leases were expiring and despite having a lawsuit on file that requested specific performance, Plaintiffs did *not* seek a preliminary injunction or other relief in this Court requesting specific performance before all of the Ranger Prospect leases lapsed.  Additionally, Plaintiffs did not take over and drill a well on the Ranger Prospect, which would have maintained the leases, and Plaintiffs did not extend or renew the Ranger Prospect leases.  Now, as a result, the leases have lapsed.  *See, supra,* § III(B); Ex. 7.  Accordingly, Plaintiffs' request for specific performance is moot and the Court should dismiss Plaintiffs' request for specific performance as a matter of law.

## V.  CONCLUSION

SM Energy Company requests that the Court grant summary judgment on the grounds discussed above and grant SM Energy all other relief to which it is entitled.

Respectfully submitted,

By: */s/ Amy Baird* _____
    Amy Baird
    Texas Bar No. 24044090
    S.D. ID 695255
    Email: abaird@jw.com
    Richard A. Howell
    Texas Bar No. 24056674
    S.D. ID 959050
    Email: rahowell@jw.com
    1401 McKinney Street, Suite 1900
    Houston, Texas 77010
    Phone: (713) 752-4200
    Fax: (713) 752-4221

**ATTORNEYS FOR DEFENDANT**
**SM ENERGY COMPANY**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record by email on October 19, 2017.

*/s/ Richard A. Howell* _____
    Richard A. Howell